May it please the Court, Dale. Your Honor, Your Honor, the Bankruptcy Court's application of the Barton case is simply wrong. It's not what Barton says. There's no authority in this circuit saying this is how it's to be done here. It was not created over 100 years ago to give lawyers a free pass from malpractice claims against them, nor for them to breach any pre-existing fiduciary duties that they might owe their clients. In the Crown Vantage case, the Court held that Barton protected folks, certain folks, and that those folks can still be sued after the Court balances the interests of all the parties involved. And here there was no balancing of Blixseth's interests. His rights were simply swept away by a misapplication, in my view, of the Barton decision, and an incomplete application of the Crown Vantage case. Here the Bankruptcy Court's decision constitutes a de facto adjudication of Blixseth's common law rights and violates his rights under 28 U.S.C. 157b-5 to litigate his personal injury toward claims. We think and we've advised the Court that, in our view, it's also contrary to the Stern v. Marshall case in Article III. Here there wasn't any effort to pre-screen the case or separate pre- and post-petition malpractice from the case. Well, basically, the judge found that, given the complaint, that they were wrapped together universally, as I understand it, in the sense that — I mean, no one is really doubting that if he had just sued about pre-petition malpractice, that would be one story. But in every instance, he then tied it into Mr. Brown's actions as part of his role in the bankruptcy. Your Honor, it seems to me, though, that in the process of utilizing Barton for purposes of coming to a conclusion about how the case should be handled, that the Court threw the court on several occasions in several of its decisions, and I'm referring to the Bankruptcy Court, was able to point to activity that was definitely pre-bankruptcy and indicate that that could be the basis for — Which activity do you assert is just nothing but pre-petition? Your Honor — Not at all in any way connected to the bankruptcy? As the Bankruptcy Court said in the record, ER-578, quote, for instance, any claim Blixeth may have stemming from Brown's advice with respect to — What allegations in the complaint do you contend are limited solely to pre-petition conduct? Any advice given with respect to the marital settlement agreement, the releases, et cetera, provided there, getting Mr. Blixeth involved in the — When you read the complaint, though, when you read the complaint, though, it all comes full circle to the — to the — what happens at the — at the bankruptcy proceeding. And, Your Honor, I think logically it did, because — Well, then why — how can you say — how can you limit it to just pre-petition? Well, the acts giving rise to the torts, you know, it's just like if — I suppose if you run a red light until you're stopped and ticketed, is it an infraction? Do you know that there's an infraction until somebody brings it to your attention? In this case, there was really no harm, no foul until the bankruptcy was filed and Mr. Blixeth was looking down the barrel of a $40 million judgment for his involvement vis-a-vis the Credit Suisse loan. Now, the Credit Suisse loan took place back in 05-06, and Mr. Blixeth was involved in that based upon advice which he was specifically given by Mr. Brown. Did it — If there hadn't been a bankruptcy proceeding, would Mr. Blixeth have a cause of action for malpractice against Mr. Brown? I think so. On what basis? Well, assuming there was no bankruptcy, but at some point somebody said, you can't use that money for these purposes, you've got to retain monies for the ongoing nature and business of the Yellowstone Club, then at that point in time, there may be — it may have been brought to his attention that there might be a problem with the way he had been using the funds from the Credit Suisse loan. And that's an interesting facet, and I think that's something that Judge Kirschner specifically recognized in some of his earlier decisions. He said the cornerstone of this loan product was that it allowed preferred resort owners, such as Blixeth, to capitalize on the value of their asset. Now, if you were advised that that's fine, that that's acceptable, it's something you can do, it's permissible, and Blixeth did it, and nobody took issue with that, then probably we wouldn't be here, there wouldn't be a claim, because there would be no harm, no foul, as it were. But the fact is, is that subsequently, Blixeth was advised, subsequently various creditors took the position that that was not something that he could do, and he had been improperly advised that it was something he could do. So there's the negligence, the legal negligence, and it certainly predates petition. And what about the dissolution? Pardon me? The dissolution? The solution would be... The dissolution. Divorce? There's a separate claim based on the advice. Right. There were a number of allegations relative to the release... When did the dissolution happen with regard... When did... The divorce? The divorce, yes. That was in 05, 06 as well. Also before the petition? Yes, sir. But it had an impact on the bankruptcy. It did. And would it... And it was impacted. Same question Judge Paz asked you about the advice on the loans, is would the problem exist if not for the bankruptcy? There may well have been issues cropping up as a result of all that, irrespective of the route that it did take, which was bankruptcy. And what is the specific advice that he complains about? Well, the various releases and so forth, and it ended up argument about improper allocations of assets and the tax nature of the allocation of assets and so forth. So when I looked at the complaint, the allegations relating to the Lamond litigation, that seemed to stand on its own. I think it did. Because Lamond filed suit to get his share of the distribution. And Mr. Brown represented... Didn't Mr. Brown represent Blixith in that litigation? And in the allegations in the complaint, if I remember correctly, it's that Blixith alleges that Brown didn't advise him that he had... That this should have been brought as a derivative claim. I think that's... Isn't that different? A total of that. Right, but isn't that... So the allegation is that it was malpractice not to advise him of that particular defense. That little scenario seems different than the allegations that Judge Kaczynski was just alluding to. I think... Because they all seem to come together once the bankruptcy is underway. I agree. I think they're all severable instances, severable acts of legal malpractice, not particularly at all related to each other. But the question... The Lamond litigation issue seemed to be also not particularly connected to Mr. Brown's role in the UCC. But the rest of them... Every time I'm sitting here reading the complaint and you tell a story and then you say... And you did this terrible thing by going and being the chair of the UCC and then suing him and basically turning on him. And that is the story that's all the way through the complaint. Maybe you could have separated out the... You probably could have the pre-petition issues, but you didn't. Your Honor, I think in the submittal that was made with the filing of the amended complaint, I think at... The third amended complaint. I think what he did on three pages was he presented a table outlining this is what our pre-petition complaint against Brown is all about and here's how it might relate and intertwine with post-petition. And that's in the motion for leave. Is that what it's in? Yes, Your Honor. That's at pages ER 595 through 597. And I think counsel who put that document together did a good job trying to differentiate and delineate what the pre-petition wrongful acts were and what the post-petition wrongful acts were. You've got about four minutes left. Do you want to say something? I'm sorry, I wasn't sure whether you were still answering Judge Bozo's question. Thank you, Judge. I'll save three minutes. I'll use up another minute, if I may. Well, there was still left on the clock. It will be yours. Thank you. Your Honor, the case, and I mentioned it previously,  whether the claims pertain to actions of the trustee while administering the estate. That is, the trustee's work on the estate becomes action which determines whether there can be a claim, or whether there is a claim which can be brought. And we're not saying that anything, there are allegations of conflict of interest and if you can see in the emails initiated by Andy Patent that he had real concerns about the potential conflict and so forth and Mr. Brown was justifying why there shouldn't be that concern. But in any event, beyond that, we're not alleging that there was a specific act done as a trustee or as somebody designated by the bankruptcy trustee's office. He wasn't appointed. He wasn't sitting on any committee specially designated by the court. And we're not alleging that there was any act in an official capacity that might provide Barton relief. There simply isn't any activity that should be protected under Barton. So I'll reserve the rest of my time. Thank you, Judge. Thank you. May it please the court, counsel? They try to portray this as a simple legal malpractice case. And the issue before you is whether three judges who looked at this erred in applying the Barton doctrine to the SEC. Oh, that happens all the time. It might happen all the time. So why don't you go on and talk about why they're right. Why they're right? Well, you guys are focused on the Credit Suisse law. I mean, you've got the Barton problem and you've got a Stern problem. Right? So let's talk our way through it. First of all, does Barton apply at all to Brown? Absolutely, Barton applies. Says who? He's not a trustee, right? It says Crown Advantage says In re DeLorean, which Crown Advantage relied upon. DeLorean was 10th Circuit? DeLorean was a Sixth Circuit case. The upside down. Did DeLorean actually address this? Yes. DeLorean, if you look at footnote one, one of the members sued there was a UCC member, actually the chairman of the UCC. Right. But first of all, I thought he backed out at some point. But it certainly didn't address the question, discuss the question, analyze the question. There's not been a case which specifically says UCC is an other officer. However, Crown Advantage specifically says that Barton doctrine applies to not only the trustees, but other officers appointed by the bankruptcy court. And as Judge Malloy indicated. But not even the trustees appointed by the bankruptcy court, right? It's appointed by the U.S. trustee, right? The U.S. trustee. So the bankruptcy court approves. I know because I've done this. You approve a trustee and then somebody else appoints a trustee, as best I can remember from my days as a bankruptcy judge. That's exactly right. Somebody else appoints a trustee. So why does this even apply to a trustee? But this is not, the creditors committee is not appointed by the court. The chair of the creditors committee is not appointed by the court, right? But the bankruptcy court approves every appointment. And it's essentially this much. Well, if the Barton doctrine sweeps that far, then couldn't sue you a lawyer? I mean, there's all sorts of people that you couldn't. I mean, the bankruptcy court approves lots of stuff. The bankruptcy court does approve a lot of stuff. But in this particular case, it approved the appointment of the UCC members, including Mr. Brown. So what? Does that make the UCC members officers of the court? Yes, absolutely. You say that, but why? Crown Advantage says other officers of the court. And N. Ray DeLorean, Sixth Circuit case, specifically said it applied to UCC members. Well, we're not bound to the Sixth Circuit, so assuming they considered that, and as Judge Berzons pointed out, they didn't really say much about it, why don't you persuade me why they're not wrong, as they often are on other issues? Why don't I persuade you on what? Persuade us why we should follow the Sixth Circuit. Why? Very well. Because of the acts. When you look at the complaint that they presented to Judge Curser in the bankruptcy court, were specifically about Mr. Brown's alleged conduct, which precipitated the bankruptcy court trustee pursuing action. Suppose they rewrote the complaint. What's that? Suppose they were to rewrite the complaint and allege essentially that the advice given caused these problems, and that regardless of Mr. Brown's role on the UCC, the UCC and the liquidating trust would have gone after Brown for these things and caused him all this grief. He's already had his day in court. But I'm asking you hypothetically. Would that be okay? No. Why not? Because Judge Curser has already addressed those issues. When you read what Judge Curser wrote and in the documents we cited, when they argued about the Credit Suisse loan, Judge Curser looked at what Steve Brown's role was on the Credit Suisse loan, and he concluded Steve Brown did not give Mr. Blixit the advice. They had a hearing on it. They had depositions and discovery on it. He gave him no advice on the Credit Suisse loan. Not in this case, though, and in the other case. In this underlying case. In the underlying case, not in this. And they presented that. They had the opportunity to put on evidence. Well, this is a separate lawsuit, though, not in this lawsuit. No, in this underlying AP14 proceeding. Right. Well, it's not underlying. I mean, it's not underlying in this case. It's part of this. Okay. AP14. They put on evidence. Mr. Blixit put on evidence, and Judge Curser looked at it and said, Steve Brown did not give advice to you, Mr. Blixit, on the Credit Suisse loan. Your allegations about that don't have any merit. Your only role on the Credit Suisse loan was to give advice on the Credit Suisse loan. But that would require – but that wasn't the ground on which the permission to proceed was denied here. The ground was that all of this was interrelated, that what they said Steve Brown did on Credit Suisse, the marriage settlement agreement, release language, even Lamont, was all intertwined with Steve. What I'm asking you is whether this complaint, forgetting what the truth is on the ground, shorn of the connection to Mr. Brown's role at the UCC, would be covered by Barton. I'm not sure I understand your question again, Your Honor. All right. Forget it. I've asked it three times now, so it's not going to help. If you ask it, and I believe I've tried to answer it, every single allegation they made against Steve Brown was because of his actions. You still haven't – I'm still waiting for you to answer Judge Kaczynski's question. On why Barton Doctrine should apply to UCC members? Yes. Because as a number of courts have held, they are approved by – Why though? What is the fundamental principle at stake? The fundamental principle is you'll never get anybody to serve on one of these committees and absent they're being approved by the bankruptcy court. So, look, I never had the experience of practicing, of working as a bankruptcy judge. I only did it for four months. As Judge Kaczynski did. It was good. But my understanding was that the – is that the – my limited understanding is that the unsecured creditors committee is sort of like – it's identified by a statute. Its authority comes from – there's a statute that authorizes an unsecured creditors committee. Is that right? It's authorized by a statute. And it has certain duties. But then it's approved by the bankruptcy court. Where and how is it approved by the – is there some – who files a petition that says bankruptcy court approve this makeup of this creditors committee? How does that – when does that happen? The bankruptcy – you are correct that the UCC was set up by statute and they were appointed by the largest creditors. And then ultimately once they were appointed – once that was appointed, Judge Kerser, the bankruptcy court judge, approves the actions that they take. But whose interests were they operating in? They essentially operated on behalf of the estate because they were taking to recover money for the estate. Their primary role, though, is to look out for the interest of all the unsecured creditors, correct? Which they look out for the interest. Generally speaking. Generally speaking, but by looking out for the unsecured creditors, they also look out for the estate. Well, let me ask you this. My understanding here, though, is that at some point, I guess it was part of the plan, the unsecured creditors committee in this particular case took on a greater role. They did. They went – The judge charged them with the responsibility of determining whether litigation was appropriate. That is correct. Correct? They did. They filed a motion. Judge Kerser approved that, that they could proceed with litigation against Mr. Blixith. They did take on a larger role. So are you – is your argument that any creditors committee is subject to the role in this particular case? Because the actions that they took, which precipitated, ultimately, as Mr. Dubik said, the judgment being entered against Mr. Blixith. It was their role in precipitating that litigation. You gave an answer to one of my questions, which sounded to me like you were saying that the district court approved the composition of the creditors committee. That's what I understood you to say. Is that right? It approves their actions. It did not approve the composition of the – Okay. So you misspoke when you said they approved. If I did, then I misspoke. They did say that. And your brief says that. And it's not so? The bankruptcy court approves their actions. But do they approve the people? It approves the appointment by allowing – it does by allowing them to proceed with particular actions. There is not a separate order entered by a bankruptcy court. You know, you're better off just saying no because you're just digging yourself in deeper. You put something in your brief that really wasn't accurate. You said something to me this morning that really isn't accurate. He got caught. No. Okay. So the fact of the matter is there is no order of the bankruptcy court approving the composition of the committee. And my brief was – No. Is that right? There is no order of the court appointing the bankruptcy – the UCC committee. Approving them. Saying these are the names and I approve them. There's nothing like that. There is no order of saying – So to the extent you said something different and to the extent your brief says something different, it's wrong. And I respectfully disagree. My brief does not say that, Your Honor. My brief says that the bankruptcy court approved the actions of these – of this UCC in precipitating – excuse me – in precipitating litigation against Mr. Brickson. Well, we can run back the tape and see what you said this morning. You know, you are on video, you know. But also, see, in this instance, it's the identity that's all important. I mean, the problem that he's pointing to is the fact that the person who was – and the person of Mr. Brown, he's claiming had duties of loyalty to him and shouldn't have been on this committee. If the judge did not approve the appointment of Mr. Brown to the committee or appoint him, then what – where does the Barton concern come in? Even if he approved what they did. Actually, Mr. Brickson was in favor of Mr. Brown being on the committee. That came out in the – What does that have to do with my question? Well, you said that Mr. Brickson was against it. I didn't say that. I said that he's now complaining that there was a duty of loyalty. But the question is – I've been troubled all along by this case, by the fact why would the judge put a lawyer who had in any way represented Mr. Brickson in any of these proceedings in a position of authority? Now you're telling me that the judge didn't, in fact. But as you read – as you read the excerpts of the record, Mr. Blixet – excuse me, Mr. Brown did not participate in decisions concerning Mr. Blixet. Mr. Brown's duty of loyalty was addressed in the underlying matter. But that's not what I'm asking you. I'm saying that if the judge had – knowing this connection, had made the appointment, it would be one thing. But that's not what happened here. The judge did not enter the order appointing Mr. Brickson. Or approving him or anything else. There's not a separate order approving them. There's an order approving their actions. Let me ask you a slightly different question. Assuming that – and we haven't even gotten to Stern, which is another big problem for you. But let's say Mr. Brown had not been on the creditors' committee at all. Would any of the allegations of the complaint stay the claim against him? Would they stay the same? No. Would they stay the claim? No, sir. Would they stay the claim? No, sir. They would not stay the claim. Why not? They allege pre-petition conduct that damaged Mr. Blixet. Why? Because there was a hearing on it. I mean, there was advice given with regard to the loan. And there was advice given with regard to the marital dissolution. Those are allegations. So let's say he wasn't on the committee at all. Why wouldn't those state pre-petition claims that are independent of the bankruptcy? Because they've already had a hearing on it. And the judge, Curser, determined that the advice they claimed was given was not given. But that's not the judgment in this case. The judgment in this case rests on Stern and Barton, right? The judgment is available. We can't enter somebody's judgment here. I mean, what you're saying is they lose on the merits. But I was asking a different question. Does he stay the claim? Does he stay the claim? No, he does not stay the claim. Just because you say somebody committed malpractice doesn't mean you've stayed at a claim. You have to have the facts to back up that claim. And in this case, he didn't have the facts. The advice was not given that they claimed. They had a hearing on it. It was determined that he did not give the advice they claimed was given. His role was different on the Credit Suisse loan, different on the marriage settlement agreement release. On the marriage settlement agreement, Mr. Burton. We're looking at a complaint, and this is what we're trying to get you to focus on. Yes. In this case, a complaint. He says that's not what happened. In the complaint. All right. If the case goes forward, you can win. But that's not the question. Right. And when you look at the complaint and you read it in total, all of the alleged acts are tied to what Mr. Brown supposedly did in bankruptcy court by reneging on the advice given. That's why I asked you the question. Let's say he was not on the committee. If he was not on the committee. Yes. There's no bankruptcy proceeding at all involved in Mr. Brown. No, no. There is a bankruptcy proceeding, but Mr. Brown is not on the committee. Wouldn't he have suffered the same harm, everything that he alleged is in the complaint? I mean, we just changed one fact. He's not, Mr. Brown is not on the committee. Doesn't the complaint state a perfectly valid claim? No, because the complaint says that all of Mr. Brown's acts are what caused the bankruptcy of Mr. Blixit and ultimately to get the Class B shareholders, the Lamond Group, to proceed against Mr. Blixit. Okay. But what we're trying to get you to tell us, and I asked the same question 15 minutes ago or 10 minutes ago, was if the complaint was that Mr. Brown did all these things pre-petition, which I understand you say he didn't do, but that's what it says, and causing this all ended up in bankruptcy, and because of that, there was a lawsuit filed for breach of judiciary duty and fraudulent transfer, and it ended up with a huge judgment against Mr. Blixit, all because of what Mr. Brown did. And let's assume Mr. Brown was not on the committee. Is there anything about that complaint? And it wasn't in the complaint that he was on the committee. Is there anything about that complaint that would preclude it from going forward without a barred problem? He's not a member of the – he's not a court-appointed officer, and no, I believe he would be able to proceed. All right. So the fact that the bankruptcy occurred and all this stuff occurred is not the problem. The problem is Mr. – is that there's some discussion of Mr. Brown being on the committee. It's Mr. Brown's role on the committee, because supposedly his role on the committee he precipitated the trustee and others proceeding and ultimately obtaining judgments against Mr. Brown – excuse me, against Mr. Blixit. What about your Stern problem? Do you want to deal with that? Pardon? What about your Stern problem? The Stern problem, I believe, is the way they phrase it is Judge Curser didn't have the authority to enter a final order in this case, and it doesn't make any difference because, as ruled in executive benefits, even if Judge Curser should have entered only findings of fact and conclusions of law because there was a de novo review done by the district court, Judge Haddon, that cures that error. I think it was Judge Molloy. No, I apologize. Judge Molloy was first, then Judge Curser, Judge Haddon. Judge Haddon is the one who reviewed it. We're reviewing, in this case, we're reviewing Judge Molloy's. No, you're reviewing Judge Haddon's. Judge Haddon is the one who affirmed the denial of the motion. Judge Molloy originally told him to do findings and conclusions. Okay. That's correct, Judge Molloy. But he didn't do it that way. Judge Molloy told him to do findings and conclusions. But, as I pointed out in the supplemental authority under Wellness International, if you consent, and this Court's already ruled in N. Ray Bellingham that a party can consent by proceeding in bankruptcy court, and Mr. Blixit – Did the bankruptcy court here, in fact, have proposed findings and conclusions? Did it prepare separate proposed findings? No, sir. It prepared what was a final order. And did the district court say it was adopting a – it was entering its own order? I thought it said affirmed. No, it said affirmed based upon its own separate de novo review. And under an executive benefits, even if the bankruptcy court erred in not making that order as findings and conclusions, under executive benefits, a de novo review cures that error. Was the judgment here – was the bankruptcy court's order even a final judgment? Was this the most – Yes. Denial of the motion for leave to sue? Right. Is it a final judgment? It's not a final judgment. It was a final order. Okay. Okay. Thank you. Thank you. Thank you. Your Honors, the DeLorean case involved counsel for a trustee. There was no UCC. It's in apposite to the situation we have here. Here, there isn't any quasi-judicial function served by Mr. Brown. Indeed, what's really curious to me, and again, I haven't been involved in the other bankruptcy processes here, but what's interesting to me is that you have an attorney who tells other folks, wondering about his potential conflict situation, that, quote, I know better than almost anyone almost the various agreements which have been struck over the years. Well, of course, he was also – I mean, it's all very complicated, because he was also a lawyer for the debtor at various points, and I think for BGI. So what hat he was wearing when he learned whatever he learned, we don't know. But I think Your Honors' questions about let's assume that he wasn't on the committee is a perfect question to ask. And I sense from the response that's been given is that the malpractice case would have been able to proceed. Thus, we're in a situation where because of an interpretation and application of Barton, which I think is wrong, we're precluded from doing anything about the acts and omissions committed by Mr. Brown pre-petition, for that matter, post-petition. And I think that's wrong. Does it make any difference here on Barton that the bankruptcy judge sort of approved and commissioned almost the unsecured creditors committee to look at, you know, going after assets? I don't know that the bankruptcy judge commissioned. Well, I mean, that's a little strong, but authorized them. No, I don't think that changes. I think in a complicated bankruptcy case, judges look for any involvement. Well, let me ask you, in a regular bankruptcy case, does an unsecured creditors committee have the authority to sort of pursue litigation on behalf of the estate? I don't know the answer, the specific answer to that. I presume that they could seek leave to do that. But I don't think there's any statute or any bankruptcy rule that entitles them of their own accord to initiate litigation. Well, does it make a difference that they're working on behalf of the estate? I don't know that they're working on behalf of the estate. I heard that allegation, but I think they're working on behalf of the unsecured creditors. Well, sometimes you help the or often you help the unsecured creditors by helping the estate. If you augment the estate, the unsecured creditors are very close to the bottom of the, among the last to recover. I guess the debtor himself is the last. Right. But right above the debtor are the unsecured creditors, and everybody else gets their money, gets his money first. The government gets first, the secured creditors get, the estate expenses come first. So by helping to enhance the estate, the unsecured creditors are helping themselves, right? I'm sure it's a matter of perspective, and that can certainly happen. But I think that their primary obligation and goal is to help themselves. Do you know who actually appoints the creditors committee? I know they get elected. I think they're appointed by the U.S. trustee office. Is it the U.S. trustee? I now don't remember. And the judge only, this is my understanding, I've had some weird bankruptcy experience, but it doesn't count for this purpose. We won't pry into it. And my understanding is that the judge would get involved only if he's got a problem with one of the folks on the committee, and then would have some contact with the U.S. trustee's office about doing something about that issue. But that's my understanding of the bankruptcy judge's role vis-à-vis appointing, not appointing folks to the UCC. What about the argument raised by opposing counsel that whether or not Barton, by its term, applies, that policy applies and we really ought to extend it if necessary to apply to the creditors committee, because this is a statutory committee that helps the court function. It's a little bit like, not quite, but like the U.S. trustee, the prosecutor in a criminal case. It's a part of the process without which the court couldn't perform its function. Go ahead. No, that's, you know, I think there's some validity to that, but I don't think that that can somehow be utilized. The idea would be that they're out there doing these functions which are necessary for the court to complete this process, and if people can just sue them without permission of the court, they could get bogged down in this collateral litigation and wouldn't be able to interfere with the administration of the state. There's something to that argument, don't you think? I think there is. I would concede that there is, Judge. On the other hand, you know, I don't think Mr. Brown went in volunteering to be the head of the committee, believing that he had any immunity, because at that time in the Ninth Circuit there wasn't any such beast. There wasn't any immunity for folks serving on that committee. Well, maybe not, but whatever we say will govern future creditors' committees, and so we can't focus just on Mr. Brown. Why, as a matter of policy, shouldn't the Barton Doctrine be extended, if necessary, to include members of the credit committee? Well, it certainly would be an incentive for folks to get on the committee to avoid potential liability. Well, it would only avoid liability for things they do as members of the committee. It wouldn't necessarily impact your complaint in this case, but why shouldn't the Barton Doctrine, the whole policy of it, be that if you are performing functions as a member of a creditors' committee, or as a trustee, you are sort of a key cog in the machinery of administering the state, and people shouldn't sue you for that conduct without permission of the judge. So it makes a great deal of sense, don't you think? There is some sense to be made of that. But the Barton Doctrine, as such, doesn't preclude anybody from suing anybody. It just says where you sue, right? Well, it provides immunity for folks that are specifically... I thought it doesn't provide immunity. It simply provides immunity if you can assume a bankruptcy court. There are separate doctrines that provide immunity, but Barton itself has nothing to do with it. It's not an immunity doctrine. Is that right? But it's not an immunity doctrine, but it does provide protection until the issue can be looked at. Right. Okay. And that hasn't happened in this case. There haven't been findings and conclusions. There hasn't been an evidentiary hearing on the amended complaint. You know, we filed the amended complaint, and it's presumed... you shouldn't be allowed to go forward with the suit. But the second part is not what we've been discussing at all. We've been discussing the first part, right? And so it's not an immunity doctrine as such. I have one more question, and I know you'll weigh over your time. But Judge Molloy said specifically the following. Mr. Brown, as chair of the Unsecured Creditors Committee, was a court-approved officer. In the past, bankruptcy courts were responsible for appointing members of an unsecured creditors committee, he says. But now the United States Treasury, the trustee, has responsibility for that task. Since the United States trustee's appointments are subject to the bankruptcy court's approval, committee members are functionally equivalent to court-appointed officers. Now, that seems completely contrary to what we were told earlier. So which is the case? Was Judge Molloy just flat wrong about all this? No, I think Judge Molloy was trying to give credence, credibility, to folks appointed to serve on committees such as this. Were they formally appointed by the bankruptcy court? And does the bankruptcy court approve appointments or not? No, they weren't. So he's wrong. I think Judge Molloy is technically wrong on that point. I always hate to pick on classmates, but I don't think he was right on that. This committee and none of the people on the committee were specifically appointed by the bankruptcy court. They just weren't. Thank you, Your Honors. Thank you. Okay, well, the case of Foggy was answered.
judges: Kozinski, Paez, Berzon